**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**


THE JAMES MADISON PROJECT,      )
1250 Connecticut Avenue, N.W.    )
Suite 700                        )
Washington, DC 20036             )
                                 )
and                              )
                                 )
BRIAN J. KAREM,                  )
22 West Jefferson Street         )
Suite 309                        )
Rockville, Maryland 20855        )
                    Plaintiffs,  )
v.                               )
                                 )      Civil No.  8:22-cv-153-PWG
NATIONAL SECURITY AGENCY,        )
                                 )
                    Defendant.   )


**<u>NATIONAL SECURITY AGENCY'S MEMORANDUM IN SUPPORT OF IT'S
MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 2

FACTUAL AND PROCEDURAL BACKGROUND............................................................ 2

I.     The FOIA Request ............................................................................................. 2

STATUTORY STANDARDS................................................................................................ 5

I.     The Freedom of Information Act ....................................................................... 5

II.    Special Considerations in National Security Cases ........................................... 7

ARGUMENT ...................................................................................................................... 8

I.     NSA Properly Withheld Intelligence Information under FOIA Exemptions
1 and 3................................................................................................................... 8

      A.     NSA properly withheld intelligence information under Exemption 1,
which protects classified information from disclosure. ......................... 8

      B.     NSA properly withheld statutorilty protected information under
Exemption 3. ....................................................................................... 12

            1.     The NSA correctly determined that the NSA Act protects portions
of the withheld documents from disclosure................................ 14

            2.     NSA correctly determined that 18 U.S.C. § 798 protects the
withheld information from disclosure.......................................... 16

            3.     NSA correctly determined that the Intelligence Reform and
Terrorism Prevention Act of 2004 protects the withheld materials
from disclosure............................................................................ 18

      C.     NSA reasonably concluded that no information was segregable.......................... 18

CONCLUSION................................................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*ACLU v. DoD*,
  628 F.3d 612 (D.C. Cir. 2011) ...................................................................... 7, 12, 18

*Afshar v. Dep't of State*,
  702 F.2d 1125 (D.C. Cir. 1983) ........................................................................... 8

*Agility Pub. Warehousing Co. K.S.C. v. NSA*,
  113 F. Supp. 3d 313 (D.D.C. 2015) ................................................................... 14

*All Party Parliamentary Grp. on Extraordinary Rendition v. U.S. Dep't of Def.*,
  134 F. Supp. 3d 201 (D.D.C. 2015) ................................................................... 17

*Ass'n of Retired R.R. Workers v. U.S.R.R. Ret. Bd.*,
  830 F.2d 331, 336 (D.C. Cir. 1987) ................................................................... 13

*August v. FBI*,
  328 F.3d 697 (D.C. Cir. 2003) ............................................................................. 5

*Carter v. NSA*,
  962 F. Supp. 2d 130 (D.D.C. 2013);
  *aff'd*, 2014 WL 2178708 (D.C. Cir. Apr. 23, 2014) ...................................... 17, 18

*CIA v. Sims*,
  471 U.S. 159 (1985) ................................................................................. 5, 13, 18

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*,
  160 F. Supp. 3d 226 (D.D.C. 2016) ................................................................... 11

*Ctr. for Nat'l Sec. Studies v. DOJ*,
  331 F.3d 918 (D.C. Cir. 2003) ............................................................................. 7

*DiBacco v. U.S. Dep't of the Army*,
  926 F.3d 827 (D.C. Cir. 2019) ........................................................................... 13

*Elec. Privacy Info. Ctr. v. Dep't of Justice*,
  296 F. Supp. 3d 109 (D.D.C. 2017) ................................................................... 11

*Elec. Priv. Info. Ctr. v. NSA*,
  678 F.3d 926 (D.C. Cir. 2012) ........................................................................... 15

*Founding Church of Scientology of Wash., D.C. v. NSA*,
    610 F.2d 824 (D.C. Cir. 1979) ............................................................. 16

*Hayden v. NSA*,
    608 F.2d 1381 (D.C. Cir. 1979) ....................................................... 15, 16

*Igoshev v. Nat'l Sec. Agency/Cent. Sec. Serv.*,
    Case No. 17-cv-1363-ELH, 2018 WL 2045530 (D. Md. May 1, 2018);
    *aff'd*, 746 F. App'x 221 (4th Cir. 2018) .............................. 12, 14, 15, 16

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989) .......................................................................... 5

*Juarez v. DOJ*,
    518 F.3d 54 (D.C. Cir. 2008) .............................................................. 19

*Judicial Watch, Inc. v. Dep't of Def.*,
    715 F.3d 937 (D.C. Cir. 2013) ............................................................. 9

*Krikorian v. Department of State*,
    984 F.2d 461 (D.C. Cir. 1993) ............................................................ 13

*Larson v. U.S. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) ................................................. 6, 7, 15, 17

*Light v. DOJ*,
    968 F. Supp. 2d 11 (D.D.C. 2013) ........................................................ 6

*Linder v. NSA*,
    94 F.3d 693 (D.C. Cir. 1996) ........................................................ 14, 16

*Mobley v. DOJ*,
    870 F. Supp. 2d 61 (D.D.C. 2012) ....................................................... 11

*Nat'l Sec. Archive Fund, Inc. v. CIA*,
    402 F. Supp. 2d 211 (D.D.C. 2005) ..................................................... 19

*People for the Am. Way Found. v. NSA*,
    462 F. Supp. 2d 21 (D.D.C. 2006) .................................................. 14, 17

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ........................................................... 6

*Simmons v. U.S. Dep't of Just.*,
    796 F.2d 709 (4th Cir. 1986) ......................................................... 6, 7, 9

*Sussman v. U.S. Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007) ................................................................. 19

*Wickwire Gavin, P.C. v. Def. Intel. Agency*,
    330 F. Supp. 2d 592 (E.D. Va. 2004) ...................................................... 13

*Wickwire Gavin, P.C. v. U.S. Postal Serv.*,
    356 F.3d 588 (4th Cir. 2004) .................................................................... 6

*Willis v. NSA*,
    Case No. 17-cv-2038, 2019 WL 1924249 (D.D.C. Apr. 30, 2019) ......................................... 12

## **Statutes**

5 U.S.C. § 552 ................................................................................... *passim*

18 U.S.C. § 798 ................................................................................. *passim*

50 U.S.C. § 3024 ............................................................................ 4, 14, 18

50 U.S.C. § 3605 .............................................................................. 4, 14

Exec. Order No. 13,526 ................................................................. 4, 8, 9, 11

## **Rules**

Fed. R. Civ. P. 56 .............................................................................. 6

**INTRODUCTION**

This case arises from a Freedom of Information Act (FOIA) request that Plaintiffs The James Madison Project and Brian J. Karem submitted to the National Security Agency (NSA). Plaintiffs seek the disclosure of TOP SECRET intelligence reports produced by NSA—some of the most closely held and protected products that NSA creates as part of its foreign intelligence mission. Disclosing these intelligence reports would reveal the insights they provide and the classified sources and methods by which NSA collected the information. It is well-established that disclosing this type of information could reasonably be expected to cause exceptionally grave damage to national security. The intelligence reports are therefore protected from disclosure by FOIA's Exemption 1, which protects classified information, as well as FOIA's Exemption 3, which protects information specifically exempted from disclosure by statute. Accordingly, NSA is entitled to summary judgment on Plaintiffs' FOIA claim seeking disclosure of these documents.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.    The FOIA Request**

On December 27, 2021, Plaintiffs submitted the following FOIA request to NSA:

> This request seeks copies of all records in the possession or control of the NSA, including cross-references, regarding the issuance of the Beck Memo. Specifically requesters are seeking the intelligence information cited to in the Beck Memo and on which NSA relied.

Compl. ¶ 15; Declaration of Linda M. Kiyosaki, ¶ 11. The "Beck Memo" refers to an unclassified, but marked For Official Use Only (i.e., not for public dissemination outside the U.S. government), letter in support of an administrative proceeding in which a former NSA employee, John Michael Beck, was a party. Decl. ¶ 11. NSA provided the Beck Memo to Mr. Beck in 2014. Compl. ¶ 10. With their FOIA request, Plaintiffs requested

the specific intelligence information referred to and relied upon by NSA in the Beck Memo. Decl. ¶ 11.  The FOIA request also included a request for expedited processing.  *Id.*

By letter dated January 6, 2022, NSA acknowledged Plaintiffs' FOIA request and assigned it FOIA case number 113420.  Decl. ¶ 12.  NSA further acknowledged that it had started processing the request.  *Id.*   NSA also denied Plaintiffs' request for expedited processing because it did not meet the criteria for expedited processing under the FOIA. *Id.*

Plaintiffs filed this lawsuit on January 20, 2022, seeking a Court order expediting processing of their request.  Original Complaint ¶ 17, Dkt. 1.  Plaintiffs amended their complaint on February 17, 2022, adding a second cause of action for disclosure of the FOIA request.   Amended Complaint ¶¶ 18-22, Dkt. 10.

On February 17, 2022, Plaintiffs' counsel consented to narrowing the scope of the FOIA request to only "copies of the records referenced" in the 2014 Beck Memo.  Decl. ¶ 12.  On March 23, 2022, Plaintiffs' counsel further consented to additional narrowing of the FOIA request to exclude one duplicative and largely unresponsive document.  Decl. ¶ 14.  On June 7, 2022, Plaintiffs' counsel agreed not to challenge the adequacy of the agency's search.  ¶ 14.

NSA issued a final response to Plaintiffs' request on April 1, 2022.  Decl. ¶ 12. That response informed Plaintiffs that NSA had conducted a search for responsive records and had located three responsive records.  As noted above, one document was excluded from production by agreement.  NSA withheld the two remaining responsive documents in full, totaling 8 pages, under FOIA Exemptions 1 and 3.  *Id.* ¶ 12.  These two documents consist entirely of intelligence reporting derived from signals intelligence (SIGINT) that

NSA referred to and relied upon in the Beck Memo. *Id*. ¶ 20. As to Exemption 1, NSA informed Plaintiffs that the responsive documents have been reviewed and have been found to be currently and properly classified in accordance with Executive Order 13,526. *Id.* As for Exemption 3, NSA explained that the documents were protected from disclosure pursuant to 18 U.S.C. § 798, 50 U.S.C. § 3024(i), and 50 U.S.C. § 3605. *Id.*

## STATUTORY STANDARDS

### I.      The Freedom of Information Act

FOIA reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citations omitted). "Congress recognized, however, that public disclosure is not always in the public interest." *CIA v. Sims*, 471 U.S. 159, 166–67 (1985). Accordingly, although FOIA "strongly favors prompt disclosure, its nine enumerated exemptions are designed to protect those 'legitimate governmental and private interests' that might be 'harmed by release of certain types of information.'" *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (quoting *John Doe Agency*, 493 U.S. at 152). To that end, the exemptions must be given "meaningful reach and application" in order to achieve the "workable balance" that Congress has struck "between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency*, 493 U.S. at 152 (citations omitted). The agency bears the burden of justifying the withholding of material responsive to a FOIA request, and a court reviews the agency's response to the request *de novo*. 5 U.S.C. § 552(a)(4)(B).

"FOIA cases are generally resolved on summary judgment once the documents at issue have been properly identified." *Wickwire Gavin, P.C. v. U.S. Postal Serv.*, 356 F.3d 588, 591 (4th Cir. 2004) (citation omitted). Generally, "[t]he defendant in a FOIA case must show that its search for responsive records was adequate, that any claimed exemptions actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. DOJ*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013) (citation omitted).

5

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A court may award summary judgment in a FOIA action solely on the basis of information provided by the agency through declarations that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  This is not a high bar: "[u]ltimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Id.*; *Simmons v. U.S. Dep't of Just.*, 796 F.2d 709, 711 (4th Cir. 1986) (agency affidavits "must be relatively detailed and nonconclusory and must be submitted in good faith"); *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (agencies' FOIA declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims.") .").

## II.     <u>Special Considerations in National Security Cases</u>

The issues presented by the FOIA request in this case directly "implicat[e] national security, a uniquely executive purview." *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926-27 (D.C. Cir. 2003). Courts "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record[s] [in a FOIA suit] because the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [e]ffects might occur as a result of [the disclosure of] a particular classified record." *Larson*, 565 F.3d at 864 (citation omitted); *see also Simmons v. U.S. Dep't of Just.*, 796 F.2d 709, 711 (4th Cir. 1986) ("In judging

agency decisions and affidavits in the area of national security, however, courts have given substantial weight to the expertise of the agencies charged with determining what information the government may properly release."); *ACLU v. DoD*, 628 F.3d 612, 619 (D.C. Cir. 2011) (hereinafter, "*ACLU v. DoD*") (explaining that "courts lack the expertise to second-guess such agency opinions in the typical national security FOIA case"); *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927 ("[I]n the FOIA context, we have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review."). FOIA "bars the courts from prying loose from the government even the smallest bit of information that is properly classified or would disclose intelligence sources or methods." *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).

## ARGUMENT

### I. NSA Properly Withheld Intelligence Information under FOIA Exemptions 1 and 3.

There are only two documents at issue in this case, totaling 8 pages. Because the narrowed FOIA request only seeks "intelligence information," those 8 pages consist entirely of the actual and specific intelligence information and analysis that NSA referred to and relied upon in the Beck Memo. Intelligence information of this sort is quintessentially exempt from disclosure under FOIA's Exemptions 1 and 3, and NSA therefore properly withheld the two documents under these exemptions. *See* 5 U.S.C. § 552(b)(1), (b)(3). The Court should grant NSA's motion for summary judgment.

#### A. NSA properly withheld intelligence information under Exemption 1, which protects classified information from disclosure.

FOIA Exemption 1 protects from disclosure materials that are "(A) specifically authorized … by an Executive order to be kept secret in the interest of national defense or

foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).  Executive Order  No. 13,526, which governs the classification of national security information, establishes four prerequisites: (1) an original classification authority classifies the information; (2) the U.S. Government owns, produces, or controls the information; (3) the information is within one of eight protected categories listed in Section 1.4 of the Order; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, and identifies or describes that damage.  Exec. Order No. 13,526, § 1.1(a).

"Agencies may establish the applicability of Exemption 1 by affidavit (or declaration)."  *Judicial Watch, Inc. v. Dep't of Def.*, 715 F.3d 937, 940 (D.C. Cir. 2013) (citation omitted).  An agency establishes that it has properly withheld information under Exemption 1 if it demonstrates that it has met the classification requirements of Executive Order 13,526 articulated above.  And in matters affecting national security, courts afford "substantial weight" to an agency's declarations addressing classified information and defer to the expertise of agencies involved in national security and foreign relations. *Simmons*, 796 F.2d at 711.

Here, NSA determined that the two withheld TOP SECRET intelligence products are currently and properly classified, and thus exempt from disclosure under Exemption 1. Kiyosaki Decl. ¶¶ 20-21. In support of this motion, NSA attaches a declaration from Ms. Kiyosaki, an original classification authority who is authorized to classify national security information and make classification decisions at the Top Secret, Secret, and Confidential levels.  Kiyosaki Decl. ¶ 20.  In that capacity, Ms. Kiyosaki personally reviewed the

information and confirmed that it is owned and under the control of the United States.  *Id.*
¶ 20.  Ms. Kiyosaki determined that the withheld information falls into the category of
"'intelligence activities (including covert action), intelligence sources or methods, or
cryptology.'"  *Id.* ¶ 19 (quoting Exec. Order No. 13,526 § 1.4(c)).

The two withheld documents, which are NSA intelligence products, contain
intelligence reporting derived from SIGINT and associated analysis. Id. ¶ 20.  NSA closely
protects this type of information, the disclosure of which would reveal classified sources
and methods by which NSA collected the information.  *Id*.  One of NSA's primary missions
is to collect, analyze, produce, and disseminate signals intelligence information (SIGINT).
Decl. ¶ 5.  SIGINT involves collecting foreign intelligence from communications and
information systems, including foreign communications, radar, and other electronic
systems.  *Id.*  To carry out this task, NSA has spent billions of dollars developing a
sophisticated worldwide SIGINT collection network to acquire and exploit foreign signals.
*Id.* ¶ 6.  This network allows NSA to provide crucial intelligence information for our
national defense.  *Id.*

But NSA's ability to advance its core mission to collect and produce SIGINT
depends on its access to foreign signals.  *Id.* ¶ 5, ¶ 8.  These SIGINT capabilities are
expensive and fragile; public disclosure of either the capability to collect specific signals
or the substance of the SIGINT information itself can easily alert foreign adversaries to the
vulnerability of their signals.  *Id.* ¶ 8. SIGINT information obtained from intercepted
foreign communications is called communications intelligence (COMINT).  *Id.* ¶ 9.  The
withheld information constitutes communications intelligence.  *Id.* ¶ 30.  The identity of
the foreign target, the vulnerability of these communications, and the degree of success in

9

collecting and exploiting foreign communications "must be maintained in the strictest secrecy." *Id.* ¶ 9.   The disclosure of even a single intercepted communication has the potential to reveal and disrupt NSA's collection techniques that apply to targets around the world.   *Id.*   Disclosure of this information would encourage our adversaries to use countermeasures.   *Id.* ¶ 9.   Once alerted, these targets could alter the way they communicate, and deprive the United States of information that is crucial to our national defense at home and abroad.   *Id.* And if a target successfully alters its communication techniques, the NSA loses information from that source unless NSA can establish a new and equivalent exploitation of that target's signals. *Id.*

Ms. Kiyosaki therefore determined that the withheld intelligence products are currently and properly classified at the TOP SECRET level because their release could reasonably be expected to cause exceptionally grave harm to the national security.  *Id.* ¶ 20; E.O. 13,526.

Ms. Kiyosaki's declaration thus satisfies the four requirements of Executive Order 13,526, as it establishes that (1) an original classification authority, Ms. Kiyosaki, is classifying the information; (2) the information is owned by, produced by or for, and is under the control of the United States Government, (3) the information falls within one or more of the categories of information listed in Section 1.4 of the Executive Order – specifically the category for information that pertains to "intelligence activities (including covert action), intelligence sources or methods, or cryptology"; and (4) the original classification authority has determined that the unauthorized disclosure of this information reasonably could be expected to result in damage to the national security—including directly to the activities of the NSA.  *See* Exec. Order No. 13,526 § 1.4(c).

10

Where an original classification authority has averred "that the information withheld under Exemption 1 would reveal the actual intelligence activities and methods used by" the agency or "would disclose the intelligence gathering capabilities of the activities or methods directed at specific targets," the information is properly withheld under Exemption 1. *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 160 F. Supp. 3d 226, 234 (D.D.C. 2016) (citation omitted); *see also Elec. Privacy Info. Ctr. v. Dep't of Justice*, 296 F. Supp. 3d 109, 124 (D.D.C. 2017) ("[A]n agency attempting to withhold information under Exemption 1 must show that it 'complies with classification procedures established by the relevant executive order and withholds only such material as conforms to the order's substantive criteria for classification.'" (quoting *Mobley v. DOJ*, 870 F. Supp. 2d 61, 66 (D.D.C. 2012)) (alteration omitted)); *Igoshev v. Nat'l Sec. Agency/Cent. Sec. Serv.*, No. 17-cv-1363-ELH, 2018 WL 2045530, at *6 (D. Md. May 1, 2018), *aff'd*, 746 F. App'x 221 (4th Cir. 2018); (finding similar declaration from NSA declarant sufficient to support agency's invocation of information withheld under Exemption 1); *Willis v. NSA*, No. 17-cv-2038, 2019 WL 1924249, at *6 (D.D.C. Apr. 30, 2019) (same).  Because Ms. Kiyosaki explains that the withheld documents are currently and properly classified, and would cause grave damage to national security and the NSA's mission if released, NSA correctly determined that Exemption 1 of the FOIA exempts those portions from disclosure.

**B.      NSA properly withheld statutorily protected information under Exemption 3.**

In addition to its determination that the withheld intelligence information is exempt from disclosure under Exemption 1, NSA properly withheld the two documents under Exemption 3.  This exemption incorporates into FOIA "the protections of other shield

11

statutes," *ACLU v. DoD*, 628 F.3d at 617-18, by excluding from FOIA's purview matters that are "specifically exempted from disclosure by statute" if the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  The Government's mandate to withhold information under Exemption 3 is broader than its authority under Exemption 1, as it does not have to demonstrate that the disclosure will harm national security.  Instead, "[t]o invoke Exemption 3, the government need only show that the withheld material falls within a statute meeting the exemption's conditions." *DiBacco v. U.S. Dep't of the Army*, 926 F.3d 827, 835 (D.C. Cir. 2019) (citation omitted); *Wickwire Gavin, P.C. v. Def. Intel. Agency*, 330 F. Supp. 2d 592, 601 (E.D. Va. 2004) (In reviewing an Exemption Three claim, the court does not 'closely scrutinize the contents of a withheld document; instead, [it] determine[s] only whether there is a relevant statute and whether the document falls within that statute.'" quoting *Krikorian v. Department of State,* 984 F.2d 461, 465–66 (D.C. Cir. 1993)).

The "purpose of Exemption 3 [is] to assure that Congress, not the agency, makes the basic nondisclosure decision." *Ass'n of Retired R.R. Workers v. U.S.R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987); *see also id.* ("[T]he policing role assigned to the courts in a[n Exemption 3] case is reduced.").  Following the Supreme Court's decision in *Central Intelligence Agency v. Sims*, courts apply a two-pronged inquiry when evaluating an agency's invocation of Exemption 3.  *See* 471 U.S. 159, 167-68 (1985).  First, the court must determine whether the statute qualifies as an exempting statute under Exemption 3. *Id.*  Second, the court decides whether the withheld material falls within the scope of that

12

exempting statute. *Id.* "If an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise … the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions." *DiBacco*, 926 F.3d at 835.

Here, NSA invoked Exemption 3 to withhold certain information under three Exemption 3 qualifying statutes: Section 6 of the National Security Agency Act of 1959, 50 U.S.C. § 3605; the Espionage Act 18 U.S.C. § 798; and Section 102(A)(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 3024. Decl. ¶ 24. All three statutes have been recognized as Exemption 3 statutes. If the Court finds that NSA's invocation of any one of these statutes is proper, that statute alone suffices to justify NSA's partial withholding in this case, and the Court need not consider the applicability of the other two statutes. *See Agility Pub. Warehousing Co. K.S.C. v. NSA*, 113 F. Supp. 3d 313, 329 n.7 (D.D.C. 2015) (court "need not opine about the sufficiency of" Section 6 of the National Security Act and Section 798, because Section 102A(i)(1) "provides ample support for the propriety of NSA's invocation of Exemption 3"); *Igoshev*, 2018 WL 2045530, at *7 (finding that FOIA request is "covered by at least one of the statutes," 50 U.S.C. § 3605, thus the court "need not consider the other two" statutes).

      3. **The NSA correctly determined that the NSA Act protects portions of the withheld documents from disclosure.**

The National Security Agency Act of 1959 ("NSA Act"), 50 U.S.C. § 3605, which confers a special statutory privilege on NSA, "is the broadest of" statutes that have been held to qualify as Exemption 3 statutes in cases involving NSA. *People for the Am. Way*

*Found. v. NSA*, 462 F. Supp. 2d 21, 28 (D.D.C. 2006).  Section 6 of the Act provides that "nothing in this chapter or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof . . . ."  50 U.S.C. § 3605(a).  This Act reflects Congress's finding that disclosure of [any] information relating to NSA activities is potentially harmful.  For this reason, courts have strictly construed the statute.  *See Linder v. NSA*, 94 F.3d 693, 696 (D.C. Cir. 1996) ("[T]he plain language of the statute . . . states unequivocally that 'nothing in this *Act or any other law* . . . shall be construed to require the disclosure,'" and this "statutory language that cannot be confined." (citation omitted)). Consistent with this strict approach to the statute, courts have held that the "any other law" language necessarily encompasses the FOIA.  *See, e.g.*, *Larson*, 565 F.3d at 868 ("Section 6 qualifies as an Exemption 3 statute, and provides absolute protection. The NSA . . . need only demonstrate that the withheld information relates to the organization of the NSA or any function or activities of the agency." (citations omitted)); *Hayden v. NSA*, 608 F.2d 1381, 1390 (D.C. Cir. 1979); *Igoshev*, 2018 WL 2045530, at *8 (noting § 3605 is an Exemption 3 statute).

Exemption 3 does not require NSA to demonstrate specific harm to national security when invoking the statute as a protection from disclosure, or to demonstrate that the information protected is or should be classified.  *See Hayden*, 608 F.2d at 1390 ("A specific showing of potential harm to national security, while necessary for Exemption 1, is irrelevant to the language of [the statute] . . . [because] Congress has already, in enacting the statute, decided that disclosure of NSA activities is potentially harmful.").  To invoke the exemption, NSA need demonstrate only that the information the FOIA requester seeks

14

pertains to NSA's functions and activities and therefore falls within the scope of Section 6. *See Larson*, 565 F.3d at 868; *Hayden*, 608 F.2d at 1390 ("The factual showing required here for NSA to satisfy Exemption 3 is by nature less than for Exemption 1. In its affidavits, the Agency must show specifically and clearly that the requested materials fall into the category of the exemption . . . that all requested documents concern[] a specific NSA activity."). And, "[b]ecause Section 6 of the National Security Agency Act 'is a statute qualifying under Exemption 3,' the only question is whether the withheld material satisfies the criteria of the exemption statute[.]" *Elec. Priv. Info. Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012) (quoting *Founding Church of Scientology of Wash., D.C. v. NSA*, 610 F.2d 824, 828 (D.C. Cir. 1979)).

Here, the two withheld documents are protected by the statutory protections of Section 6 because the documents are NSA intelligence products, which contain intelligence reporting derived from SIGINT and associated analysis. *Id.* ¶ 20. As Ms. Kiyosaki explains, one of NSA's "primary missions" is "to collect, process, analyze, produce, and disseminate SIGINT information for foreign intelligence and counterintelligence purposes." Decl. ¶ 5. The withheld documents are "intelligence reports, which are closely held and protected products that NSA creates as part of its foreign intelligence mission." *Id.* Disclosing these materials would "reveal[] classified sources and methods by which NSA collected the information." Decl. ¶ 20. The D.C. Circuit has specifically held that Section 6 prohibits the disclosure of SIGINT reports: "There can be no doubt that the disclosure of SIGINT reports would reveal information concerning the activities of the agency" because "'signals intelligence is one of [NSA's] primary functions'; and the release of the reports would 'disclose information with respect to [NSA] activities, since

any information about an intercepted communication concerns an NSA activity.'" *Linder v. Nat'l Sec. Agency*, 94 F.3d 693, 696 (D.C. Cir. 1996) (quoting *Hayden v. NSA*, 608 F.2d 1381 (D.C. Cir. 1979).  Because this intelligence would reveal the Agency's intelligence activities, disclosure is expressly prohibited by section 6, and the Court "need not consider the other two" exemption statutes relied upon by NSA.  *Igoshev*, 2018 WL 2045530, at \*8.

> 4.  **NSA correctly determined that 18 U.S.C. § 798 protects the withheld information from disclosure.**

18 U.S.C. § 798 "prohibits the unauthorized disclosure of classified information: (i) concerning the communication intelligence activities of the United States, or (ii) obtained by the process of communication intelligence derived from the communications of any foreign government." 18 U.S.C. § 798.  Communications intelligence is defined as the "procedures and methods used in the interception of communications and the obtaining of information from such communications by other than the intended recipients."  18 U.S.C. § 798(b).  The D.C. Circuit has acknowledged that Section 798 qualifies as an Exemption 3 statute.  *See Larson*, 565 F.3d at 868; *see also Carter v. NSA*, 962 F. Supp. 2d 130, 138-39 (D.D.C. 2013) (applying 18 U.S.C § 798 as an Exemption 3 statute), *aff'd*, No. 13-5322, 2014 WL 2178708 (D.C. Cir. Apr. 23, 2014) (per curiam).

As Ms. Kiyosaki explains, the withheld intelligence reports constitute "communications intelligence" and, under the plain terms of the statute, revealing such communications intelligence would violate § 798.  Decl. ¶ 30.  Accordingly, these materials were properly withheld from disclosure under Section 798 and Exemption 3.  *See People for the Am. Way Found.*, 462 F. Supp. 2d at 31 n.8 (explaining that Section 798 "essentially protect[s] from disclosure information relating to the 'sources,' 'methods,' and 'procedures' of the NSA's intelligence activities," and that NSA's "commonsense

position" that requested information would reveal sources and methods of intelligence gathering means that such information is "protected from disclosure by the plain language of . . . 18 U.S.C. § 798"); *see also All Party Parliamentary Grp. on Extraordinary Rendition v. U.S. Dep't of Def.*, 134 F. Supp. 3d 201, 208 (D.D.C. 2015) (holding that NSA's invocation of Exemption 3 relying on Section 798 was proper); *Carter*, 962 F. Supp. 2d 130, 141 (D.D.C. 2013) (same).

> 5. **NSA correctly determined that the Intelligence Reform and Terrorism Prevention Act of 2004 protects the withheld materials from disclosure.**

The third and final statute on which NSA relies for its invocation of Exemption 3 is the Intelligence Reform and Terrorism Prevention Act of 2004, codified at 50 U.S.C. § 3024(i)(1). Decl. ¶¶ 27, 31. Under this Act, "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). As Ms. Kiyosaki explains, "NSA, as a member agency of the U.S. Intelligence Community, must also protect intelligence sources and methods." Decl. ¶ 27. It is well established that § 3024(i)(1) qualifies as an Exemption 3 statute. *See Am. Civ. Liberties Union.*, 628 F.3d at 619 (recognizing prior holding that Section 102(A)(i)(1) qualifies as an Exemption 3 statute); *Carter*, 962 F. Supp. 2d at 139. The Supreme Court has recognized the "broad sweep of [§ 3024(i)(1)'s] statutory language," as well as its lack of any "limiting language." *Sims*, 471 U.S. at 169; *see also id.* at 169-70. As the Court observed, the Act "simply and pointedly protect[s] all sources of intelligence that provide, or are engaged to provide, information [that] the Agency needs to perform its statutory duties with respect to foreign intelligence." *Id.*

Like 18 U.S.C. § 798, § 3024(i)(1) may be invoked to protect SIGINT and COMINT collection. As discussed above , NSA has invoked § 3024(i)(1) here to withhold

17

information that "would reveal intelligence information" and would "jeopardize the sources and methods NSA used to collect that information, which is further protected under 50 U.S.C. § 3024." Decl. ¶ 28, 31. Such information is expressly protected by § 3024(i)(1), and is correspondingly exempt from disclosure under Exemption 3.

**C. NSA reasonably concluded that no information was segregable.**

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b)(9). But an agency need not disclose records in which the nonexempt information remaining is meaningless. *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005) (concluding that no reasonably segregable information existed, where "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words."). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). And as with other aspects of its review under FOIA, a court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. DOJ*, 518 F.3d 54, 61 (D.C. Cir. 2008).

Here, NSA conducted a careful review of the two responsive documents, which each consist entirely of an intelligence product. Decl. ¶ 21. NSA determined that these eight pages contained no meaningfully segregable information that could be released to the public, and thus, withheld the two documents in full. *Id.* And even where there are stray lines containing unclassified or "Unofficial/For Official Use Only" material, the agency

determined that that material is not meaningful or substantive.  *Id*.  Given the nature of the information contained in these two records, and the presumption afforded to agencies' segregability determination, NSA is entitled to summary judgment on this issue.

## **CONCLUSION**

For all the foregoing reasons, NSA respectfully requests that the Court grant its motion for summary judgment and enter judgment in its favor on all claims.

Dated: June 10, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director
Federal Programs Branch

*/s/  Lisa Newman*
LISA NEWMAN (TX Bar No. 24107878)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-5578
E-mail:  lisa.n.newman@usdoj.gov
*Counsel for Defendant*