## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THE JAMES MADISON PROJECT,<br>1250 Connecticut Avenue, N.W.<br>Suite 700<br>Washington, DC 20036<br><br>and<br><br>BRIAN J. KAREM,<br>22 West Jefferson Street<br>Suite 309<br>Rockville, Maryland 20855<br>                Plaintiffs,<br>v.<br><br>NATIONAL SECURITY AGENCY,<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No.  8:22-cv-153-PWG |

## NATIONAL SECURITY AGENCY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION**

In this FOIA case, Plaintiffs seek the disclosure of TOP SECRET intelligence reports produced by the NSA—some of the most closely held and protected products that NSA creates as part of its foreign intelligence mission.  It is undisputed that disclosing these intelligence reports would reveal the insights they provide and the classified sources and methods by which the NSA collected the information, risking exceptionally grave damage to national security.  The intelligence reports are therefore protected from disclosure by FOIA's Exemption 1, which protects the disclosure of classified information, as well as FOIA's Exemption 3, which protects information specifically exempted from disclosure by statute.

Plaintiffs do not meaningfully rebut the Agency's showing that the intelligence reports are exempt from disclosure under Exemptions 1 and 3, nor do they address the numerous cases holding that this sort of intelligence information is quintessentially exempt from disclosure.  They half-heartedly argue that the Agency did not provide a rational explanation or "even a minimal level of detail" justifying the withholdings.  Dkt. 22 at 7. But the NSA's declarations clearly establish with specific facts, not boilerplate as Plaintiffs claim, that the eight pages of withheld material are actual intelligence reporting.  The declaration provided the level of detail it needed to justify the exemptions, and nothing more was required.  Plaintiffs' desire to learn more about the withheld information does not drive the analysis.  Nor did the information the Agency provided in order to meet its burden to justify its withholdings waive its claim that the information is exempt, a proposition that would prevent an agency from defending its withholdings in every FOIA case.

Plaintiffs also argue the Agency failed to segregate the records and make a rote request for *in camera* review of the documents. But the declaration, as well as a supplemental declaration provided herewith, establish that there is no meaningfully segregable information and supports the claimed exemptions, thereby obviating any need for *in camera* review.

Accordingly, the Court should grant the NSA summary judgment.

## ARGUMENT

I.    **NSA properly withheld intelligence information under FOIA Exemptions 1 and 3.**

There are only two documents at issue in this case, totaling 8 pages. As the NSA demonstrated in its opening brief, because the narrowed FOIA request only seeks "intelligence information" about a particular topic, those 8 pages consist entirely of the actual and specific intelligence information and analysis that NSA referred to and relied upon in the Beck Memo. Defendant's Motion for Summary Judgment (Def.'s Mot.), Dkt. 21-1 at 3-4. Intelligence information of this sort is quintessentially exempt from disclosure under FOIA's Exemptions 1 and 3, and the NSA therefore properly withheld the two documents in full under these exemptions. *Id.* at 7-18. Plaintiffs' arguments to the contrary are not persuasive and should be dismissed.

A.    **NSA properly withheld intelligence information under Exemption 1, which protects classified information from disclosure.**

Plaintiffs do not meaningfully rebut the Agency's argument that two TOP SECRET intelligence reports, which consist entirely of the actual and specific intelligence information and analysis that NSA referred to and relied upon in the Beck Memo, were properly withheld under Exemption 1. Plaintiffs also do not contest that an actual and specific intelligence report is classified or that it does not satisfy any of the four

requirements of Executive Order 13,526.  In particular, Plaintiffs do not contest the determination of NSA's declarant, Ms. Kiyosaki, that intelligence reports clearly fall into the category of "'intelligence activities (including covert action), intelligence sources or methods, or cryptology.'"  Dkt, 22-2, Decl. ¶ 19 (quoting Exec. Order No. 13,526 § 1.4(c)). Nor do Plaintiffs meaningfully rebut that disclosure of an NSA intelligence product containing intelligence reporting derived from SIGINT and associated analysis could reasonably be expected to cause exceptionally grave damage to national security.  Decl. ¶ 20.  And Plaintiffs fail to address, let alone challenge, the case law cited in NSA's opening brief holding that intelligence information of this sort is exempt from disclosure under Exemption 1.  *See* Def.'s Mot. at 11; *see also Elec. Priv. Info. Ctr. v. Off. of Dir. of Nat'l Intel.*, 281 F. Supp. 3d 203, 210 (D.D.C. 2017) (holding that a TOP SECRET intelligence report is covered by Exemption 1); *Larson v. U.S. Dep't of State*, 565 F.3d 857, 863-64 (D.C. Cir. 2009) (holding that "intelligence cables" are properly withheld under Exemption 1).  Plaintiffs fail to cite to *any* case finding a TOP SECRET intelligence product or intelligence report is not properly exempt from disclosure under Exemption 1.

Plaintiffs instead label the Kiyosaki declaration "boilerplate" and claim it "fails to provide even a minimal level of detail."  Pls.' Mot. at 7.   In support of this argument, Plaintiffs concede that they simply wants to know more about the 8 pages of withheld information to help them understand their "significance, if any, in the debate regarding UHIs . . . ."  *Id*.  Plaintiffs' desire to know more about the TOP SECRET information that has been withheld is irrelevant to the Exemption 1 analysis.  Plaintiffs further maintain that details such as the dates, lengths, authors, and formats of the documents are "necessary and relevant to meeting NSA's withholding burden," but they never explain why that is the

case. *Id.* at 7-8.  Such information is, in fact, not necessary to NSA's burden, which it met

by explaining and attesting that the two withheld documents are NSA intelligence products

that contain intelligence reporting derived from SIGINT and associated analysis, and that

disclosure of this type of information would reveal classified sources and methods by

which NSA collected the information.  The details Plaintiffs suggest are lacking in the

declaration are "of no legal consequence" because "increased specificity has no bearing"

on whether the Agency met its burden in demonstrating that the documents were properly

withheld under Exemption 1, which it did.  *Igoshev v. Nat'l Sec. Agency/Cent. Sec. Serv.*,

No. 17-cv-1363-ELH, 2018 WL 2045530, at *6 (D. Md. May 1, 2018), *aff'd,* 746 F. App'x

221 (4th Cir. 2018).

Moreover, as Ms. Kiyosaki explained, given the highly classified nature of these

intelligence reports, the Agency "cannot provide additional detail concerning the withheld

materials without risking exceptionally grave damage to national security."  Decl. ¶ 21;

Supp. Decl. ¶ 5-6.  Plaintiffs argue that the Agency can provide more information,

suggesting that the Beck Memo or public statements by the President and other officials

acknowledging UHIs waived such additional details, Pls.' Mot. at 8, but they don't point

to any statements that match additional detail about the withheld materials.  *See, e.g.*,

*Public Citizen v. Dep't of State*, 11 F.3d 198, 201 (D.C. Cir. 1993) (plaintiff seeking to

establish waiver through official acknowledgement must identify "specific information in

the public domain that duplicates that being withheld.").

Relatedly, Plaintiffs fault NSA for not providing a "Vaughn index, which would

normally 'show specifically and clearly that the requested materials fall into the category

of documents' that Congress has exempted."  Pls.' Mot. at 8.  But an agency may provide

a declaration instead of a Vaughn index.  *See, e.g.*, *Schneider v. U.S. Dep't of Just.*, 498 F.

Supp. 3d 121, 131–32 (D.D.C. 2020) (cleaned up) (an agency need not produce a Vaughn

index to justify its withholdings where the declarations "give the reviewing court a

reasonable basis to evaluate the withholding.").  Where the volume of withheld records is

small, as is the case for the 8 pages of withheld materials here, a declaration that discusses

the withheld information and justifies any exemptions may in fact be preferable to doing

so in an index form.  As Plaintiffs acknowledge, what matters is that the Agency meet its

burden to explain why the withheld material is properly exempt, Dkt. 22 at 9, not the form

that takes.  The Agency did just that.

Accordingly, the NSA has sustained its burden to show that the intelligence reports

were properly withheld in full under Exemption 1.

> **B.**    **NSA properly withheld statutorily protected information under Exemption 3.**

"To invoke Exemption 3, the government need only show that the withheld material

falls within a statute meeting the exemption's conditions."  *DiBacco v. U.S. Dep't of the*

*Army*, 926 F.3d 827, 835 (D.C. Cir. 2019) (citation omitted).  The Agency demonstrated in

its opening motion that three different withholding statutes applied: Section 6 of the

National Security Agency Act of 1959, 50 U.S.C. § 3605; the Espionage Act, 18 U.S.C. §

798; and Section 102(A)(i)(1) of the Intelligence Reform and Terrorism Prevention Act of

2004, 50 U.S.C. § 3024.  The Agency also demonstrated that the intelligence reports fell

within the ambit of each of those statutes.  Dkt. 21-1 at 11- 18.  Plaintiffs do not rebut,

much less address, the Agency's arguments that the intelligence reports are exempt from

disclosure under each statute, nor do they point the Court to any authority holding otherwise.

**50 U.S.C. § 3605**.   Plaintiffs do not rebut the government's argument that the NSA's intelligence reports are clearly exempt from disclosure under 50 U.S.C. § 3605, and they fail to address the D.C. Circuit's holding that "[t]here can be no doubt" that "SIGINT reports" are exempt from disclosure under § 3605.  *Linder v. Nat'l Sec. Agency*, 94 F.3d 693, 696 (D.C. Cir. 1996).  By failing to respond, Plaintiffs conceded this argument, and the Court need not consider need whether the documents are properly withheld under the remaining exemptions.

**18 U.S.C. § 798**.   Similarly, Plaintiffs do not rebut Ms. Kiyosaki's assertion that the withheld intelligence reports constitute "communications intelligence" and, under the plain terms of the statute, revealing such communications intelligence would violate § 798. Again, Plaintiffs provide no explanation for their assertion that "§ 798 does not necessarily apply," or otherwise explain why the Agency's explanation of segregability has any bearing on the applicability of § 798.  Pls.' Mot. at 12.

**50 U.S.C. § 3024**.   Finally, Plaintiffs do not rebut Ms. Kiyosaki's explanation that the withheld intelligence reports would clearly "reveal intelligence information" and would "jeopardize the sources and methods NSA used to collect that information, which is further protected under 50 U.S.C. § 3024."  Decl. ¶ 28, 31.  Instead, Plaintiffs assert that the NSA did not argue—and no court has held—that § 3024 is "an Exemption 3 statute."  Dkt. 22 at 12.  They are wrong on both accounts, as the Agency did explicitly argue that 50 U.S.C. § 3024 is an Exemption 3 statue and that courts have recognized it as such.  Dkt. 21-1 at 17-18; *see also Larson*, 565 F.3d at 865 (referencing 50 U.S.C. § 403–1(i)(1), now codified

at 50 U.S.C. § 3024(i)(1)) (citation omitted); *see also DiBacco*, 795 F.3d at 197 (same); *Am. Civ. Liberties Union.*, 628 F.3d at 619 (recognizing prior holding that Section 102(A)(i)(1), previously codified at 50 U.S.C. § 403-1(i)(1), qualifies as an Exemption 3 statute).

Having argued that NSA provided too little information about the withheld information for purposes of Exemption 1, Plaintiffs argue that what information NSA did provide to justify its exemptions—specifically, that the two documents "consist entirely of an intelligence product, which means they contain information from intelligence reporting derived from SIGINT and associated analysis or explanation"—somehow waived its ability to rely on Exemption 3. Pls.' Mot. at 11. This clearly did not waive the specific content of the intelligence reporting. As noted above, there must be a match between the public statements and the withheld information for a waiver to occur. Plaintiffs do not— and could not—argue that the Agency has publicly disclosed the specific intelligence reports that the Agency withheld. Plaintiffs' argument would also mean that to defend a withholding, by providing a sufficiently detailed explanation as to why the withheld material falls within a FOIA exemption, is to waive another exemption, which of course cannot be right.

Accordingly, the NSA has sustained its burden to show that the intelligence reports were properly withheld in full under Exemption 3.

## II.    **NSA reasonably concluded that no information was segregable.**

As the Agency explained in its opening brief and declaration in support, the NSA conducted a careful, line by line review of the two responsive documents, which each consist entirely of an intelligence report. Def.'s Mot. at 18-19; Decl. ¶ 21. The NSA determined that these eight pages contained no meaningfully segregable information that

could be released to the public, and thus, withheld the two documents in full. *Id.* "Given the limited nature of the requested document and that each of the declarations attest to a thorough examination of the document, the [NSA] has satisfied its segregability obligation." *Schneider v. U.S. Dep't of Just.*, 498 F. Supp. 3d 121, 131–32 (D.D.C. 2020).

Plaintiffs take issue with Ms. Kiyosaki's declaration explaining that stray lines or words in the report contain unclassified or "Unofficial/For Official Use Only" material, and they equate this with "an admi[ssion] on the public record" that this "information can be released." Dkt. 22 at 13. That is incorrect. As explained in Ms. Kiyosaki's supplemental declaration, the intelligence reports are exempt in their entirety from disclosure under both Exemptions 1 and 3, and thus the premise of Plaintiffs' argument that NSA "must divulge all portion of documents that are not specifically exempted by statute from disclosure" is faulty and should be rejected. Pls.' Mot. at 13.

Specifically, as Ms. Kiyosaki details in her supplemental declaration, there is information in the intelligence reports marked "(U), or (U//FOUO)" indicating that the information that follows is unclassified or for official use only. *See* Supplemental Declaration of Linda M. Kiyosaki ¶ 4 (Supp. Decl.). But that (U) or (U//FOUO) designation (referred to as portion marking) is done on a line-by-line, or paragraph by paragraph basis, and that unclassified designation is made based on "the information standing alone, without reference to any contextual information (including the information surrounding the word, sentence, or paragraph), or even the fact that the information appears in a SIGINT intelligence report." Supp. Decl. ¶ 4. Thus, under NSA policy, even though "particular stray portions of the intelligence reports responsive to the FOIA request at issue are portion marked (U) or (U//FOUO), those pieces of information are nonetheless

classified when considered in context of the document as a whole." Supp. Decl. ¶ 5 (citing

NSA/CSS Policy Manual 1-52, at p. 31, Annex A ¶ 31, available at

https://www.nsa.gov/portals/75/documents/news-features/declassified-documents/nsa-

css-policies/NSACSS_PM_1-52_20210108.pdf.). In other words, a document containing

words or sentences marked (U), may still be classified in its entirety, because the

unclassified information when viewed in context of the TOP SECRET intelligence report

as a whole, would reveal sensitive classified information that cannot be publicly released

without causing grave harm to national security. Decl. ¶ 6. That is exactly the situation

here. *Id.*

As Ms. Kiyosaki explains, that is because an experienced reader, such as a foreign

intelligence service analyst, could look at the information marked (U) or (U//FOUO), and

in the context of the remainder of the redacted intelligence report, glean valuable

information to identify the nature and substance of the redacted portions of the report.

Supp. Decl. ¶ 5. For example, a foreign intelligence analyst could use the information that

is portion marked (U) or (U//FOUO), along with the context that the Agency has

acknowledged such reports as responsive to the subject matter of the present FOIA request,

to make factual associations and relationships between the unredacted and redacted

portions of the intelligence reports. *Id.* These associations and relationships could then

provide valuable contextual clues concerning the source, type, subject matter, and amount

of classified intelligence the United States currently possesses or is capable of gathering

on a particular subject. *Id.* Additionally, the disclosure of such information may pose a

threat to national security as a part of a "mosaic" of information gleaned from the context

of the document itself as well as from various sources collected over time by a foreign

intelligence service.  *See, e.g.*, *Larson*, 565 F.3d at 864 ("Minor details of intelligence information may reveal more information than their apparent insignificance suggests because, much like a piece of jigsaw puzzle, each detail may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself.") (citation omitted)); *CIA v. Sims*, 471 U.S. 159, 178 (1985) (cautioning that "[w]hat may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context").

That is why Ms. Kiyosaki confirms that "[t]he entirety of the intelligence reports that were withheld in full are currently and properly classified as TOP SECRET."  Supp. Decl. ¶ 6.  "The information marked (U) or (U//FOUO), when viewed in the context of the TOP SECRET intelligence report as a whole, would reveal classified information and cannot be disclosed without causing grave harm to national security."  *Id.*   Thus, "there is no segregable information that can be publicly released without causing grave harm to the national security."  *Id.*  Plaintiffs have provided no basis for this Court to discredit the statements in Ms. Kiyosaki's declarations, especially considering the substantial deference this Court must give agency declarations describing potential harm to national security. *See Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 927 (D.C. Cir. 2003) (noting that the D.C. Circuit has "consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review").

This case is unlike the segregability cases relied upon by Plaintiffs, which are inapposite and do not deal with TOP SECRET intelligence reports withheld under Exemptions 1 and 3.  Pls. Mot. at 13-14 (citing *Davin v. U.S. Dep't of Just.*, 60 F.3d 1043, 1052 (3d Cir. 1995); *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 950 (D.C. Cir. 1998);

*Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291,

1300 (N.D. Cal. 1992).    *Davin* involved 10,000 pages of FBI investigative records

pertaining to "David Lasser and The Workers Alliance of America," approximately 7,400

of which had been withheld where the agency did not "describe the process" it undertook

to determine segregability.    *Davin*, 60 F.3d at 1052.    Likewise, in *Bay Area Lawyers*

*Alliance*, the government submitted Vaughn indexes, and all of the indexes entirely

"fail[ed] to discuss segregability."    *Bay Area Laws. All.*, 818 F. Supp. at 1298.

        In contrast, there are only two highly classified documents responsive to the FOIA

request, and the Agency explained the reasons for withholding both documents in full and

the harm that would arise out of a disclosure of these documents.    Ms. Kiyosaki submitted

a "sworn declaration[]" which represented that she had "reviewed" the documents and

"conducted a    page-by-page, line-by-line review and released all non-exempt,

reasonably segregable information."    *Schneider*, 498 F. Supp. 3d at 131–32.    And Ms.

Kiyosaki "re-reviwe[d] these documents" and "confirmed that there is no segregable

information in the documents that can be disclosed" without "causing grave harm to the

national security."    Supp. Decl. ¶ 1.

        Indeed, where the Agency "met its burden of demonstrating that the entire report

falls within Exemptions 1 and 3, and that there are no portions of the report that can safely

be released … without jeopardizing our national security," *Elec. Priv. Info. Ctr.*, 281 F.

Supp. 3d at 215-16, there "are no reasonably segregable portions of the report that the

agency must release," *id.* at 208; *see also Larson*, 565 F.3d at 863 ("The CIA concluded

that no meaningful information could be segregated from the cables for release.").    So too

here. The Agency demonstrated that the entire intelligence reports are protected by

Exemptions 1 and 3.  Supp. Decl. ¶ 6, 7.  Given the nature of the information contained in these two intelligence reports, Ms. Kiyosaki's supplemental declaration that revealing (U) or (U//FOUO) in context of the highly classified documents would cause grave harm to national security, and the presumption afforded to the Agency's segregability determination, the NSA has met its burden in demonstrating segregability, and the NSA is entitled to summary judgment on this issue.  *Cf. Schneider*, 498 F. Supp. 3d at 131–32.

If, however, the Court finds that NSA has not adequately demonstrated that the entire classified reports must be withheld pursuant to Exemption 1 or Exemption 3, the Agency respectfully requests that the Court permit NSA to submit a supplemental *in camera, ex parte* declaration explaining the context in greater detail than is possible on the public record rather than denying the Agency's motion for summary judgment.  *See, e.g.*, *Judicial Watch*, 715 F.3d at 944 (saying doubt as to whether document was properly classified "would merit a remand requiring an agency official to review the documents and file an additional affidavit, or, in rare cases, requiring the district court to review the documents in camera"); *Campbell*, 164 F.3d at 31 (remanding case for district court to review documents in camera or require the agency to provide a new declaration).  This is especially true here, given the highly sensitive and TOP SECRET nature of the intelligence reports at issue.

### III.    In Camera review is unnecessary and inappropriate.

Plaintiffs urge the Court to review the TOP SECRET intelligence reports *in camera* because they believe that the Agency did not adequately justify its withholdings.  But Plaintiffs' suggestion that the Court should review "the documents in camera" is "meritless" because the Court "may rely on affidavits in lieu of an *in camera* review when they are sufficiently detailed, as they were in this case."  *Linder v. Nat'l Sec. Agency*, 94

F.3d 693, 696–97 (D.C. Cir. 1996).  Because the Agency met "its burden by means of affidavits, in camera review is neither necessary nor appropriate." *Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).  Moreover, as explained above, conducting an *in camera* review of the documents would be especially inappropriate in this case where Plaintiffs did not meaningfully rebut the government's assertion that these intelligence reports are properly withheld under both Exemptions 1 and 3. As noted above, should the Court conclude that the Agency's declarations lack specificity, the Agency should be permitted to submit a supplemental *in camera, ex parte* declaration, rather than the Court conducting an *in camera* review of the documents.

## CONCLUSION

For all the foregoing reasons and the reasons set forth in the NSA's opening brief, the NSA respectfully requests that the Court grant its motion for summary judgment and enter judgment in its favor on all claims.

Dated: September 9, 2022                    Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director
Federal Programs Branch

*/s/  Lisa Newman*
LISA NEWMAN (TX Bar No. 24107878)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-5578
E-mail:  lisa.n.newman@usdoj.gov
*Counsel for Defendant*