UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| THE JAMES MADISON PROJECT and BRIAN J. KAREM, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL SECURITY AGENCY, <br><br> Defendant. | Civil Action No. TDC-22-0153 |

**MEMORANDUM OPINION**

Plaintiffs The James Madison Project and Brian J. Karem have filed a civil action against Defendant National Security Agency ("NSA") requesting the release of government records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2018). Pending before the Court is the NSA's Motion for Summary Judgment. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

**BACKGROUND**

In 1987, Michael Beck joined the NSA as an employee. In 1996, Beck and Chuck Gubete, an NSA colleague, traveled to "a hostile foreign country" as part of an official work assignment. Am. Compl. ¶ 8, ECF No. 10. Ten years later, in 2006, Beck was diagnosed with a rare form of young-onset Parkinson's Disease. Gubete was diagnosed with the same rare form of Parkinson's Disease and died in 2013 from complications associated with that disease.

In 2014, the NSA sent Beck and his attorney an Unclassified/For Official Use Only memorandum, dated October 16, 2014 (the "Beck Memorandum"), which states:

> The National Security Agency confirms that there is intelligence information from 2012 associating the hostile country to which Mr. Beck traveled in the late 1990s with a high-powered microwave system weapon that may have the ability to weaken, intimidate, or kill an enemy over time and without leaving evidence. The 2012 intelligence information indicated that this weapon is designed to bathe a target's living quarters in microwaves, causing numerous physical effects, including a damaged nervous system. The National Security Agency has no evidence that such a weapon, if it ever existed and if it was associated with the hostile country in the late 1990s, was or was not used against Mr. Beck.

Beck Mem., Opp'n Mot. Summ. J. Ex. 1-A, ECF No. 22-1. In the last five years, more than two hundred United States government officials have reported health challenges similar to those suffered by Beck, referred to in the press as "Havana Syndrome." Am. Compl. ¶ 11. In 2021, President Joseph R. Biden, Jr. signed legislation to provide compensation to victims of "Havana Syndrome." David E. Sanger *et al.*, *Biden Signs Legislation to Compensate Victims of Mysterious "Havana Syndrome,"* N.Y. Times (Oct. 12, 2021), https://www.nytimes.com/2021/10/08/us/politics/havana-syndrome-biden-law.html.

On December 27, 2021, Plaintiffs the James Madison Project, a non-partisan organization established to promote government accountability and to educate the public on issues relating to intelligence and national security, and Brian J. Karem, an investigative reporter, submitted a FOIA request to the NSA seeking the release of "copies of all records in the possession or control of the NSA, including cross-references, regarding the issuance of the Beck Memo," including "intelligence information cited to in the Beck Memo and upon which NSA relied." Am. Compl. ¶¶ 15, 19. After the NSA denied Plaintiffs' request for expedited processing and did not respond to their disclosure request, Plaintiffs filed this action on January 20, 2022. The parties subsequently agreed to narrow the scope of the FOIA request to only the records referenced in the Beck Memorandum. Ultimately, the NSA identified three documents responsive to the FOIA request but withheld them pursuant to FOIA statutory exemptions. By agreement of the parties,

only two of these documents (the "Beck Records"), totaling eight pages, are the subject of the present dispute.

## DISCUSSION

In its Motion, the NSA argues that summary judgment should be granted in its favor because it properly invoked FOIA statutory exemptions in withholding the Beck Records. Plaintiffs argue that: (1) the declaration provided by the NSA in support of its Motion is not sufficiently detailed to justify summary judgment; (2) the NSA waived a FOIA exemption by officially acknowledging information within the scope of that exemption; and (3) the NSA is required to segregate and release unclassified material in the Beck Records. Plaintiffs also request that the Court conduct an *in camera* review of the documents.

### I.   Legal Standards

#### A.   Summary Judgment

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

3

**B.     FOIA**

FOIA provides that a federal agency, "upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). FOIA "was enacted to maintain an open government and to ensure the existence of an informed citizenry." *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1245 (4th Cir. 1994). To that end, it "is to be construed broadly to provide information to the public in accordance with its purposes." *Id.* However, because "public disclosure is not always in the public interest, the statute contains nine exemptions that reflect a wide array of concerns and are designed to safeguard various public interests against the harms that would arise from overbroad disclosure." *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 703 F.3d 724, 728–29 (4th Cir. 2013) (internal citations omitted). The numbered exemptions include categories for (1) classified material relating to national defense or foreign policy; (2) internal personnel rules and practices of an agency; (3) information specifically exempted from disclosure by statute; (4) trade secrets; (5) certain inter- or intra-agency memoranda; (6) personnel and medical files and other files the disclosure of which would constitute an unwarranted invasion of personal privacy; (7) certain law enforcement records; (8) certain information relating to the regulation or supervision of financial institutions; and (9) and geological and geophysical information and data. 5 U.S.C. § 552(b)(1)–(9). "FOIA exemptions are to be narrowly construed." *Am. Mgmt. Servs., LLC*, 703 F.3d at 729 (quoting *FBI v. Abramson*, 456 U.S. 615, 630 (1982)). The Government has the "burden of demonstrating that a requested document falls under an exemption." *Id.* (quoting *Hunton & Williams v. Dep't of Justice*, 590 F.3d 272, 276 (4th Cir. 2010)). The Government can meet this burden by "describing the withheld material with reasonable specificity and explaining how it falls under one of the enumerated

4

exemptions." *Id.* (quoting *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 290 (4th Cir. 2004)).

When a plaintiff asserts a civil claim that an agency failed to disclose information as required by FOIA, courts "shall determine the matter de novo." 5 U.S.C. § 552(a)(4)(B). In resolving the matter, a court may "examine the contents of . . . agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions." *Id.* In FOIA cases, a district court need not allow full discovery before granting summary judgment. *Simmons v. U.S. Dep't of Justice*, 796 F.2d 709, 711–12 (4th Cir. 1986). Instead, summary judgment may be granted on the basis of a declaration or affidavit from the agency explaining its decision, so long as the agency's affidavit is relatively detailed and nonconclusory. *Id.* Furthermore, "[i]n judging agency decisions and affidavits in the area of national security . . . courts have given substantial weight to the expertise of the agencies charged with determining what information the government may properly release." *Id.* at 711.

## II.  Specificity of Declarations

In support of the Motion, NSA relies primarily on a declaration by Linda M. Kiyosaki, the NSA Chief of Enterprise Guidance Services, who is a Top Secret original classification authority and oversees the NSA's FOIA Office ("the Kiyosaki Declaration"). *See* Kiyosaki Decl. ¶ 2, Mot. Summ. J. Ex. 1, ECF No. 21-2. In light of references to the presence of portions of the Beck Records marked as "Unclassified/For Official Use Only," NSA submitted with its reply brief a supplemental declaration from Kiyosaki ("the Supplemental Declaration") containing additional information explaining why such information was exempt from disclosure.

As a threshold issue, Plaintiffs argued that the Kiyosaki Declarations are insufficiently detailed to justify summary judgment. Plaintiffs thus requested that the Court conduct an *in*

*camera* review of the Beck Records or, at a minimum, order the NSA to submit an *ex parte* classified declaration with additional information. Upon review of the briefs, and pursuant to an offer by the NSA, the Court requested that the NSA submit a classified supplemental declaration providing more detailed information on the content of the Beck Records and a more specific explanation for why the unclassified portions of the Beck Records remain exempt from production. That declaration, provided by Kiyosaki ("the Classified Declaration"), was submitted on May 19, 2023.

"[W]hen an agency seeks to withhold information, it must provide 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (quoting *Mead Data Cent. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)). Agency declarations discussing national security are generally afforded "substantial weight." *See Mil. Audit Project v. Casey*, 656 F.2d 724, 745 (D.C. Cir. 1981). Accordingly, in the context of national security cases, other courts have ruled on the applicability of FOIA statutory exemptions based solely on an agency affidavit or declaration. For example, in *Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007), after the plaintiffs filed a FOIA request seeking information from the Central Intelligence Agency ("CIA") relating to a deceased Colombian politician, the court granted summary judgment to the CIA based on an agency affidavit discussing how disclosure could jeopardize national security by revealing intelligence sources or methods and could damage foreign relations. *Id.* at 372–73, 376, 378.

Here, the Kiyosaki Declaration and the Supplemental Declaration provide significant detail and explanation of why the Beck Records are classified and subject to exemption from disclosure. To the extent that additional information was needed, the Court sought and received the Classified

6

Declaration, which provides further information that confirms and solidifies the assertions in the Kiyosaki Declaration and the Supplemental Declaration. Where the subject matter of the Beck Memorandum clearly implicates national security, and it is evident from the declarations that the Beck Records are intelligence products derived from signals intelligence and thus properly classified, the Court concludes that the three declarations together provide sufficient information and details upon which to rule on the Motion. The Court therefore concludes that *in camera* review of the Beck Records themselves is not necessary to resolve the Motion.

### III.  FOIA Exemption One

The NSA first argues that the Beck Records are properly withheld pursuant to the FOIA exemption set forth at 5 U.S.C. § 552(b)(1), commonly referred to based on its subsection number as FOIA Exemption One, which provides that an agency need not make documents available to the public that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1)(A); *see Al Fayed v. United States*, 210 F.3d 421, 423 (4th Cir. 2000).

In invoking this exemption, the NSA relies on Executive Order No. 13,526 as the basis for keeping the documents secret for national defense or foreign policy reasons. Under Executive Order No. 13,526, entitled "Classified National Security Information," an agency may designate documents as classified if four conditions are met:

(1) an original classification authority is classifying the information;

(2) the information is owned by, produced by or for, or is under the control of the United States Government;

(3) the information falls within one of eight categories of information listed in section 1.4 of [Executive Order No. 13,526]; and

> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Executive Order No. 13,526, 75 Fed. Reg. 707, 707 (Dec. 29, 2009). As relevant here, Section 1.4 of Executive Order No. 13,526 provides that "[i]nformation shall not be considered for classification unless its unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security . . . and it pertains to" one of eight categories, including "(c) intelligence activities (including covert action), intelligence sources or methods, or cryptology." *Id.* at 709.

In the Kiyosaki Declaration, Kiyosaki asserts that the United States government controls the Beck Records and that the records are properly classified as Top Secret because "the release of this information could reasonably be expected to cause exceptionally grave damage to the national security." Kiyosaki Decl. ¶ 20. Kiyosaki also confirms that the Beck Records fall into the category of "intelligence activities (including covert action), intelligence sources and methods, or cryptology" in that "they contain information from intelligence reporting derived from" signals intelligence ("SIGINT") "and associated analysis or explanation." *Id.* ¶¶ 19–20. Thus, the Kiyosaki Declaration establishes that all four requirements under Executive Order No. 13,526 are met and that the Beck Records are properly classified, as necessary for the application of Exemption One.

In addition, at the Court's request, Kiyosaki submitted the Classified Declaration to provide additional information in support of her assertions in the Kiyosaki Declaration. The Court reviewed the Classified Declaration *in camera* on June 1, 2023. In paragraph 6 of the Classified Declaration, Kiyosaki provides additional information on the contents of the Beck Records which demonstrates more specifically why the Beck Records are properly classified. Particularly given

the subject matter of the Beck Memorandum, which refers to intelligence information relating to a novel weapon associated with a hostile country, the Court credits the information in both the Kiyosaki Declaration and the Classified Declaration and finds that Exemption One applies to the Beck Records.

## IV.   FOIA Exemption Three

In the alternative, NSA asserts that the Beck Records were properly withheld under the FOIA exemption at 5 U.S.C. § 552(b)(3), commonly referred to based on its subsection number as FOIA Exemption Three, which provides in part that an agency need not disclose records that are "specifically exempted from disclosure by statute" if the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding the information, or refers to the particular types of material to be withheld." 5 U.S.C. § 552(b)(3); *CIA v. Sims*, 471 U.S. 159, 167 (1985). Under Exemption Three, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978).

Here, the NSA argues that the Beck Records were properly withheld under FOIA Exemption Three on the basis of three qualifying statutes: (1) Section 6 of the National Security Act of 1959, 50 U.S.C. § 3605 (2018); (2) the Espionage Act, 18 U.S.C. § 798 (2018); and (3) Section 102(A)(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 3024.

### A.   National Security Act

Section 6 of the National Security Act provides that "nothing in this chapter or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof." 50 U.S.C. §

3605(a). At least one United States Court of Appeals has held that "Section 6 [of the National Security Act] qualifies as an Exemption 3 Statute" and that it "provides absolute protection" from disclosure, without requiring a showing of harm to national security. *Larson v. Dep't of State*, 565 F.3d 857, 868 (D.C. Cir. 2009).

Here, the Beck Records fall within the coverage of Section 6 of the National Security Act. One of the primary missions of the NSA is "to collect, process, analyze, produce, and disseminate SIGINT information for foreign intelligence and counterintelligence purposes to provide support for national and departmental requirements and for conducting military operations." Kiyosaki Decl. ¶ 5. As Kiyosaki has attested to in her declaration, the Beck Records consist of "communications intelligence" that "was gathered by NSA's SIGINT efforts." *Id.* ¶ 30. The information about the contents of the Beck Records that was provided in the Classified Declaration provides additional support for this claim. Because the record reflects that the Beck Records contain information "with respect to the activities" of the NSA, 50 U.S.C. § 3605(a), in that they are the product of NSA SIGINT activities, the Court finds that FOIA Exemption Three applies because this information is "specifically exempted from disclosure by statute," specifically, Section 6 of the National Security Act. 5 U.S.C. § 552(b)(3).

### B. Espionage Act

As relevant here, the Espionage Act provides that:

(a) Whoever knowingly and willfully communicates, furnishes, transmits, or otherwise makes available to an unauthorized person, or publishes, or uses in any manner prejudicial to the safety or interest of the United States or for the benefit of any foreign government to the detriment of the United States any classified information–

\* \* \*

(3) concerning the communication intelligence activities of the United States or any foreign government; or

>     (4) obtained by the process of communication intelligence from the communications of any foreign government, knowing the same to have been obtained by such processes–
>
> Shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 798(a). "Communication intelligence" is defined as "all procedures and methods used in the interception of communications and the obtaining of information from such communications by other than the intended recipients." 18 U.S.C. § 798(b). Plaintiffs agree that the Espionage Act has been held to qualify as an Exemption Three Statute and thus bars "the unauthorized disclosure of properly classified information." Opp'n Mot. Summ. J. at 12, ECF No. 22; *see Larson*, 565 F.3d at 868. As established by the Kiyosaki Declaration, the Beck Records constitute classified "communications intelligence" because the information in them "was gathered by NSA's SIGINT efforts." Kiyosaki Decl. ¶¶ 9, 30. Where the information in the Classified Declaration is consistent with this assertion, the Court finds that FOIA Exemption Three applies because the Espionage Act bars disclosure of the classified contents of the Beck Records.

Because the Court finds that FOIA Exemption Three applies to the Beck Records based on both the National Security Act and the Espionage Act, it need not and does not address the argument that this exemption applies based on the Intelligence Reform and Terrorism Prevention Act.

### C. Waiver

Plaintiffs also argue that the NSA has waived any use of FOIA Exemption Three. "[T]he government cannot rely on an otherwise valid exemption claim to justify withholding information that has been 'officially acknowledged' or is in the 'public domain.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130–34 (D.C. Cir. 1983)). "[A] plaintiff asserting a claim of prior disclosure must bear the initial

burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Id.* "FOIA plaintiffs cannot simply show that similar information has been released, but must establish that a specific fact already has been placed in the public domain." *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 201 (D.C. Cir. 1993). Even where a government agency has released documents, that fact does not amount to a waiver when the documents are less specific than the information being withheld or are sufficiently different. *See id.* at 202.

Here, Plaintiffs argue that the NSA has waived application of FOIA Exemption Three because the Beck Memorandum acknowledges that the Beck Records address "intelligence information" and "consist entirely of an intelligence product." Opp'n Mot. Summ. J. at 11. Plaintiffs do not, however, cite a specific fact that has been officially acknowledged by the NSA or in the public domain that would duplicate the information being withheld in the Beck Records. Moreover, upon review of paragraph 6 of the Classified Declaration, the Court finds that the Beck Records contain additional, more specific information than was disclosed in the Beck Memorandum. Accordingly, Plaintiffs have failed to meet their burden to demonstrate that the NSA has waived any application of FOIA Exemption Three or any other FOIA exemption.

## V. Segregability

Finally, Plaintiffs argue that even if the Beck Records are properly classified and subject to statutory prohibitions on disclosure, the NSA should nevertheless release those limited portions of the Beck Records that are marked Unclassified/For Official Use Only. Generally, agencies are obligated to disclose portions of documents not exempted from disclosure, and courts must make findings on whether the documents are segregable in a way to allow disclosure of certain information. *See* 5 U.S.C. § 552(b); *Kimberlin v. Dep't of Justice*, 139 F.3d. 944, 950 (D.C. Cir. 1998). In making such a determination on documents relevant to national security, courts consider

explanations provided in agency affidavits and declarations. *See Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999). Such consideration is necessary because even "[w]hat may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context." *Sims*, 471 U.S. at 178 (quoting *Halkin v. Helms*, 598 F.2d 1, 9 (D.C. Cir. 1978)).

In the Supplemental Declaration, Kiyosaki has acknowledged that the Beck Records contain certain material marked as Unclassified/For Official Use Only but asserts that those pieces of information are nevertheless classified and thus exempt from disclosure when viewed in the context of the document as a whole. In particular, the fact that such information is known to have been contained in an SIGINT intelligence report, and specifically to have been contained in records relating to the topics referenced in the Beck Memorandum, could allow an experienced reader, such as a foreign intelligence service analyst, "to make factual associations and relationships between the unredacted and redacted portions of the intelligence reports" that could provide clues on "the source, type, subject matter, and amount of classified information" possessed by the United States on the subject. Supp. Decl. ¶ 5, ECF No. 26-1. Upon review of the additional information provided in paragraphs 7–18 of the Classified Declaration, the Court agrees that because release of the portions of the Beck Records marked as Unclassified/For Official Use Only would necessarily reveal not only the specific facts contained in those sections but also the significant additional fact that the information was discussed in relation to the topics addressed in the Beck Memorandum, the NSA has appropriately deemed them to be classified when considered in the context of the whole documents. The Court therefore finds that the Unclassified/For Official Use Only portions of the Beck Records are not segregable and are exempt from disclosure.

In any event, the Court notes that, based on the contents of the Classified Declaration, the Unclassified/For Official Use Only information alone would provide to Plaintiffs no additional factual details on the subject matter of the Beck Memorandum.

Accordingly, the Court finds that all parts of the Beck Records are exempt from disclosure under FOIA Exemptions One and Three and will thus grant summary judgment to the NSA.

## CONCLUSION

For the foregoing reasons, the NSA's Motion for Summary Judgment, ECF No. 21, will be GRANTED. A separate Order shall issue.

Date: June 26, 2023

THEODORE D. CHUANG
United States District Judge